KUTAK ROCK LLP
Thomas J. Salerno (No.007492)
Douglas H. Allsworth No. 017104)
8601 North Scottsdale Road, Suite 300
Scottsdale, AZ 85253-2742
Phone: (480) 429-5000
Facsimile: (480) 429-5001
tom.salerno@kutakrock.com
doug.allsworth@kutaktrock.com

*Counsel for the Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT**
**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>PUERCO VALLEY FIRE DISTRICT,<br><br>Debtor. | Chapter 9<br><br>Case No.: 2:26-bk-07566<br><br>**STATEMENT AND DECLARATION OF ELIGIBILITY UNDER 11 U.S.C. § 109(c)** |

Puerco Valley Fire District (the "**Debtor**"), by and through the declaration of Antonia Wood, Board Chair, hereby certifies its eligibility to be a Chapter 9 debtor under section 109(c) of the United States Bankruptcy Code, as follows:

1. The Debtor is an Arizona Fire District created in 1980 providing essential fire and rescue services in Apache County (the "**County**"), and as such is a "municipality" as defined in section 101(40) of the Bankruptcy Code. The Debtor was created to provide fire protection, rescue and medical services for the protection of persons and property within the geographic boundaries of the fire district. Attached hereto as **Exhibit 1** is a map of the fire district (green shaded area) (the "**District Map**").

2. The Debtor is specifically authorized, in its capacity as a municipality, to be a debtor under Chapter 9 of the Bankruptcy Code by the laws of the State of Arizona. *See* A.R.S.

§ 35-603. Furthermore, the Debtor has adopted a resolution authorizing the filing of a Chapter 9 petition as required by A.R.S. § 35-604. *See* **Exhibit 2**.

3. The Debtor is "insolvent" within the meaning of section 101(32)(C)(ii) of the Bankruptcy Code.

4. The Debtor, as a special taxing district under Arizona law, is authorized to receive a portion of the Apache County real property tax revenues and fire district assistance tax levied by the Apache County Board of Supervisors specifically earmarked for the provision of the essential services performed by the Debtor, in accordance with A.R.S. §§ 48-805.02 and 48-807 (collectively, the "**Tax Levies**").

5. Over a period of several years, the Debtor has received distributions from the Apache County Treasurer (into what is called a "warrant account") in amounts that exceeded the maximum Tax Levy amounts attributed to the Debtor for said years (the "**Warrant Overpayment**"). In September of 2025, the Apache County Treasurer froze the Debtor's warrant account on the basis of the Warrant Overpayment. The Debtor is informed and believes that the County calculates that the Debtor has a negative balance of approximately $3,092,849.63 in its warrant account at the County, as of May 31, 2026. *See* letter as of February, 2026 from the County to Debtor attached hereto as **Exhibit 3**.

6. The Debtor desires to effect a plan to adjust its debt.

7. Prior to filing its Chapter 9 petition:

a. The Debtor is on a June 30 fiscal year. The Debtor has negotiated in good faith with representatives of the Apache County Treasurer and the Apache County Attorney regarding a multi-year plan to bring the Debtor's warrant account into balance. Among other things, the Debtor has proposed to apply a portion (20%) of its allocation of Tax Levies to reduce the negative balance over time. The Debtor has also conveyed to the County that some ongoing distributions of the Debtor's current share of Tax Levies will be necessary for Debtor to meet its monthly operating expenses in order to fulfill its public

service functions. *See* the attached budget outlining the Debtor's monthly operations. **Exhibit 4** (the "**Budget**").

b. Notwithstanding the Debtor's good faith efforts at negotiation, and despite the fact that the Warrant Overpayment resulted over a period of multiple years under the supervision and guidance of the Apache County Treasurer, representatives of the County have determined that all future Tax Levies that are allocated to the Debtor shall be applied to reduce the Warrant Overpayment, and that the County will not honor Debtor's warrants from said Tax Levies, for ongoing operations, until all over-allocations are reimbursed. Hence, the County is withholding Tax Levies allocable to the Debtor due July 1, 2026.

c. What this means, in essence, is that the Debtor cannot continue to provide the essential fire and ambulance services to the residents of Apache County because the County is refusing to transmit the current Tax Levies to the Debtor. To put this into context:

i. The Debtor operates one (1) Structure Engine, one (1) Brush Engine, one (1) Heavy Water Tender, one (1) Highway Rescue Engine (the "jaws of life"), four (4) ambulances in service and two (2) Command Units. The Debtor operates out of its station on Hwy 191 South in Sanders.

ii. In the last fiscal year the Debtor responded to 150 calls for fire/emergency services, and 916 calls for emergency medical/ambulance services. For the last fiscal year the Tax Levies account for approx. 40% of the total revenues of the Debtor. Simply put, without the Tax Levies (which are from specially earmarked property tax revenues), the Debtor will be unable to provide the necessary and lifesaving essential services it was created to perform. There are seven (7) other fire districts in Apache County, but their jurisdictional boundaries are each a small geographic area. However, Debtor is the largest fire

district in Arizona by square mileage, with 2,500 square miles within its jurisdictional boundaries, within which is an area covered by the "certificate of necessity" (known as a "CON") under which its ambulance service provides services (with the Debtor's CON designated as CON 116). *See* District Map (Exhibit 1), with the CON area outlined in green. As of July 24, 2026 the Debtor is unable to respond to emergency service calls due to a lack of funding.

iii. If the Debtor is unable to perform its services, it will add a material strain on the resources of those other districts. Should the Debtor cease its operations (which would likely happen absent getting its allocated share of the Tax Levies), the closest fire district is in St. John or Holbrook, which are small operations, with the average response time from those facilities (assuming they even had staff to cover a call) would be approx. two (2) hours. Lives and property will be jeopardized.

d. To further exacerbate the financial stress of the Debtor, in October 2023 a former employee of the Debtor (Brandi DeSpain— "**DeSpain**"), asserted that she and a related company owned (and thereby had the legal right to both vehicles owned and revenue generated by) the Debtor's ambulance operations (operated under Puerco Valley Ambulance Service, the "**PVAS**"). Even more problematic was that in October 2023, DeSpain converted $921,671 from the Debtor by unlawfully transferring funds from the Debtor's account to an account she controlled (the "**Converted Funds**"). Others working in concert with DeSpain were also involved and will be appropriately pursued for recovery. This necessitated litigation filed against DeSpain and others in 2023, pending before Hon. Christopher Coury ("**Judge Coury**") as Case No. CV-2023-017060 pending in Maricopa County, Arizona (the "**State Court Action**"). These are not mere allegations—on January 26, 2026 Judge Coury partially granted the Debtor's

summary judgment motions and determined that: (1) the Debtor lawfully owned and operated PVAS (and held the CON); (2) the Debtor held ownership of the ambulance and other vehicles of PVAS; and (3) the Converted Funds were unlawfully taken/transferred by DeSpain and belonged to the Debtor. *See Order Granting In Part And Denying In Part Motion for Partial Summary* Judgment dated January 26, 2026 at pages 8-9, a copy of which is attached hereto as **Exhibit 5** (the "**SJ Order**").

e. The Debtor has only been able to recover thus far approximately $215,000 of the Converted Funds. In the discovery and hearings held in the State Court Action DeSpain disclosed that of the nearly $1 million in Converted Funds: (1) she transferred approx. $600,000 to her attorneys (the Rose Law Group, and for which the Debtor will bring appropriate avoidance action in this case); and (2) she purchased a $95,000 pick-up truck for her personal use (for which the Debtor will pursue an appropriate avoidance action). Hence, of the over $900,000 in Converted Funds, she only had $215,000 left.

f. The loss of the Converted Funds has further exacerbated the financial issues facing the Debtor. The Debtor will continue to aggressively enforce its rights and remedies against, *inter alia*, DeSpain and the Rose Law Group, and intends to seek expedited information gathering pursuant to Bankruptcy Rule 2004. The foregoing notwithstanding, the liquidity issues facing the Debtor are immediate.

8. A.R.S. § 48-805.02(F) expressly provides that a Fire District may draw warrants against its applicable share of Tax Levies even if the district has insufficient monies in its general fund with the county treasurer, up to 90% of the taxes levied for the district's current fiscal year. Based on this authority, and A.R.S. § 48-807(S), Debtor has requested assurances from the County that warrants for the fiscal year beginning July 1, 2026 will be honored.

assurances from the County that warrants for the fiscal year beginning July 1, 2026 will be honored.

9. In response to Debtor's requests for assurance, representatives of the County have definitively stated that the County Treasurer will not honor warrants from the Debtor based on the Warrant Overpayment, or otherwise authorize distributions to the Debtor, until the entire Warrant Overpayment from prior years are repaid.

10. As a result of the confluence of events described above, the Debtor's ongoing operations are materially prejudiced and its ability to continue and maintain the essential services attendant to its operations are in jeopardy.

RESPECTFULLY SUBMITTED this 27th day of July, 2026.

PUERCO VALLEY FIRE DISTRICT

By: Antonia Wood
Its: Board Chair

**DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A MUNICIPALITY**

I, Antonia Wood, Board Chair and authorized agent of the Puerco Valley Fire District, declare under penalty of perjury that I have read the foregoing *Statement and Declaration of Eligibility Under 11 U.S.C. § 109(c)* and that it is true and correct to the best of my knowledge and belief.

DATED: July 27, 2026.

# EXHIBITS

**1** **District Map**

| | |
|---|---|
| **2** | **Filing Resolution** |
| **3** | **February 2026 Letter from Apache County** |
| **4** | **Debtor Operating Budget** |
| **5** | **Superior Court Summary Judgment Ruling (January 26, 2026)** |

# EXHIBIT 1


Puerco Fire District
Legend
Roads
BIA Non-Paved
BIA Paved Road
County Road
Major Highway
N Road
Towns
Navajo Nation
Fire Districts
County Non-Navajo Nation Land
N

# EXHIBIT 2

## RESOLUTION NO. 2026-BK01 OF THE PUERCO VALLEY FIRE DISTRICT BOARD OF DIRECTORS

At a meeting of the Puerco Valley Fire District (the "**District**") held on July 27, 2026, with a quorum of board members present, the following was discussed, and based thereon Resolution No. 2026-BK 01 was duly adopted:

1. A discussion was held in open meeting regarding the Apache County Attorney's Office's written advice to the Apache County Treasurer's Office (together, "the **County**") to withhold essentially all property tax revenues and fire district assistance tax ("**FDAT**") revenues for the 2026-2027 fiscal year and following years because of District warrant account overpayments from prior fiscal years.

2. Without the allocated annual tax and FDAT revenues, the District's ability to provide the essential services it performs for the residents of and visitors to the District for both firefighting and emergency medical/ambulance services is severely jeopardized. Lives will be at stake because of the County's actions in violation of state law.

3. The District has negotiated with the Apache County Attorney's Office regarding its advice to the Apache County Treasurer to reach a resolution whereby sufficient tax and FDAT revenue would be available to allow the District to continue its mission. The County has declined to release the tax revenue and FDAT funds.

In light of the foregoing, upon motion duly made and seconded, the Board of the District hereby resolves as follows:

**WHEREAS**, the District has determined that it is necessary and in the best interests of the District and its creditors, employees, the residents of and visitors to the District located in Apache County whom it serves, and other interested parties, that a petition be filed by the District seeking relief under the provisions of Chapter 9 of Title 11 of the United States Code (the "**Bankruptcy Code**");

**IT IS HEREBY RESOLVED** as follows:

1. The District is hereby authorized and empowered to file a voluntary petition for relief under Chapter 9 of the Bankruptcy Code (such voluntary petition, the "**Chapter 9 Proceeding**") in a court of proper jurisdiction (the "**Bankruptcy Court**") no later than July 30, 2026;

2. Antonia Wood, as Board Chair, shall be and hereby is authorized and directed to sign such documents as are necessary to effectuate the Chapter 9 Proceeding;

3. That the law firm of Kutak Rock LLP is hereby retained for the purposes of representing the District in the Chapter 9 Proceeding, and is hereby authorized and directed to take any and all such actions as are necessary and appropriate to file the Chapter 9 Proceeding, and to report to the Fire Board on a monthly basis or more frequently as circumstances may dictate regarding the status of the Chapter 9 Proceeding;

4. The District is hereby authorized and directed pay a retainer to Kutak Rock in the amount of $35,000.00 with respect to the Chapter 9 Proceeding and to execute a written retainer agreement with Kutak Rock for same; and

5. The District hereby authorizes the payment of the filing fee of $1,738 for the Chapter 9 Proceeding.

Dated: July 27, 2026

A Wood

Antonia Wood
Board Chair

# EXHIBIT 3

JASMINE BLACKWATER-NYGREN
APACHE COUNTY ATTORNEY'S OFFICE

# Pureco Valley Fire District Levy Administration and Funding Status

The purpose of this letter is to provide a clear explanation of the funding situation involving the Pureco Valley Fire District, the County's statutory role in administering fire district levies, and the legal constraints that govern how those funds may be applied.

Under Arizona law, fire districts are authorized to fund fire protection and emergency medical services through secondary property tax levies. *See* A.R.S. § 48-805(F). These levies are established based on the fire district's adopted budget and are imposed on taxable property within the district boundaries. *See* A.R.S. § 48-261. The Pureco Valley Fire District has reached the maximum levy amount permitted under applicable Arizona law. *See* A.R.S. § 48-807(F). The County's role in this process is defined by statute and is primarily administrative. The County levies the tax, collects the tax in the same manner as general property taxes, and deposits the proceeds into the fire district's designated account. *See* A.R.S. §§ 48-805 through 48-807.

Consistent with these statutory requirements, Apache County has deposited, and will continue to deposit, all levy revenues collected on behalf of the Pureco Valley Fire District into the district's account. The County does not set the fire district's budget, does not direct its expenditures, and does not withhold levy revenues that are collected.

Since the Pureco Valley Fire District's tax levy was implemented, the Pureco Valley Fire District has requested and received substantial distributions through the County Treasurer. The district has not only expended the revenues generated by its authorized levy, but has exceeded those amounts by more than $3 million. As a result, the district's account reflects a negative balance.

When a fire district receives distributions in excess of available levy revenues, Arizona law provides for reconciliation rather than supplemental funding. *See* A.R.S. § 48-807. In these circumstances, future levy collections continue to be deposited into the district's account but are applied to reduce the negative balance created by prior over-expenditures. This process does not represent additional County funding; rather, it is the statutory mechanism by which prior over-allocations are corrected.

Because the Pureco Valley Fire District account currently carries a negative balance, levy revenues that are being collected now are applied to restore that balance. Until the deficit is eliminated, there are no available funds for the district to withdraw for current operations, even though levy revenues continue to be deposited as required by law.

It is important to emphasize that Arizona law does not permit the County to provide loans, advances, or supplemental funding to fire districts beyond what is authorized by statute. *See* A.R.S. §§ 48-807 and 11-251. Counties are also subject to budgetary limitations that prohibit advancing or expending more than a specified percentage of revenues reasonably expected to be collected in a fiscal year. Accordingly, the County cannot assume responsibility for a fire district's operational deficit or inject County funds to offset over-expenditures.

Apache County has acted, and will continue to act, in full compliance with its statutory obligations. The County's role is to levy, collect, and deposit fire district taxes as required by law and to ensure that public funds are administered in accordance with Arizona statutes. The Pureco Valley Fire District is responsible for adopting and managing its own budget, operating within statutory levy limits, and ensuring that expenditures do not exceed available revenues. The district controls its spending decisions, monitors its account balance, and bears responsibility for any deficit created by over-expenditures.

Beginning in approximately 2021, the Pureco Valley Fire District's account with the County Treasurer began to carry a negative balance, reflecting distributions in excess of available levy revenues. Despite the ongoing deficit, the district continued to request and receive distributions for operational expenses for several years while levy revenues were applied to offset the negative balance. By mid-2025, after the deficit had persisted and grown to a substantial level, the County took action to cease honoring demand payments and additional withdrawals until the account balance returned to a positive status, consistent with statutory requirements and fiscal controls.

While the County is constrained by statute from providing loans, advances, or funding beyond authorized levy revenues, we recognize the financial challenges currently facing the Pureco Valley Fire District. Accordingly, the County supports the Pureco Valley Fire District's efforts to pursue outside funding sources. The County will continue to fulfill its statutory duties with respect to levy administration and stands ready to cooperate, as permitted by law, with efforts to secure external funding to support the District's essential services.

APACHE COUNTY ATTORNEY'S OFFICE, P.O. BOX 637, ST. JOHNS, AZ 85936
PHONE: (928) 337-7560 FAX: (928) 337-2427

# EXHIBIT 4

| PUERCO VALLEY FIRE DISTRICT MONTHLY OPERATING BUDGET | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| **OPERATIONAL MONTHLY** | | | | | |
| WEX Fuel Cards | $5,043.30 | | Online Only | | |
| Rhinehart Oil | $3,823.21 | | On Site Fuel | | |
| Gallup Welding /O2 Supp | $483.09 | | Oxygen Supply | | |
| First Net Cell Service | $327.98 | | Cell Phones | | |
| ENVI Health Solutions | $5,213.56 | | Medical Supplies | | |
| Table Top Phone (landline) | $109.04 | | 1-520-387-7676 | | |
| EMS/MC | $9,298.26 | | Medical Billing | | |
| IMD | $592.92 | | Medical Direction | | |
| Blue Hills Environmental | $0.00 | | Trash | | |
| NTUA Electricity/ Water Bill<br>Insurance | $0.00<br>$5000 | | Elec/Water<br>Insurance (paid annually) | | |
| SUB TOTAL | $24,891.36 | | | | |
| PAYROLL | $46,000.00 | | Paid bi-weekly | | |
| Legal Fees | $40,000.00 | | Estimated | | |
| | | | | | |
| **TOTAL** | **$115,891.26** | | | | |

# EXHIBIT 5

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2023-017060 01/22/2026

HONORABLE CHRISTOPHER COURY

CLERK OF THE COURT
S. Ortega
Deputy

PUERCO VALLEY FIRE DISTRICT — DOUGLAS H ALLSWORTH

v.

PUERCO VALLEY AMBULANCE SERVICE INC, et al. — LOGAN VINCENT ELIA

JASMIN CHIGBROW
MELISSA J ENGLAND
JEFFREY C MATURA
JOSHUA AUSTIN
RYAN T BRADWAY
JUDGE COURY

**ORDER GRANTING IN-PART AND DENYING IN-PART MOTION FOR PARTIAL SUMMARY JUDGMENT**

Several motions are pending before the Court, each of which the Court has reviewed and considered:

**<u>Plaintiff's Motion for Partial Summary Judgment</u>**

A. *Plaintiff's Motion for Partial Summary Judgment,* filed September 17, 2025 together with the statement of facts and exhibits filed concurrently therewith;

B. Defendants/Counterclaimants *Response to Plaintiff's Partial Motion for Summary Judgment*, filed November 20, 2025, together with the controverting statement of facts and exhibits filed concurrently therewith;

C. *Plaintiff's Reply in Support of Motion for Partial Summary Judgment*, filed December 17, 2025;

D. Defendants' *Motion to Strike*, filed December 29, 2025;

**<u>Plaintiff's Motion for Transfer of Funds and Account Access</u>**

E. *Plaintiff's Motion for: (1) Second Order Directing Transfer of Funds, and (2) Administrative Access to Wells Fargo Account*, filed December 4, 2025;

F. Plaintiff's *Rule 7.1(b) Notice of Non-Compliance and Request for Ruling*, filed December 24, 2025;

G. Defendant's *Response to Plaintiff's Motion for (1) Second Order Directing Transfer of Funds, and (2) Administrative Access to Wells Fargo Account*, filed December 29, 2025;

H. Defendant's *Response to Rule 7.1(b) Notice of Non-Compliance and Request for Ruling*, filed December 29, 2025;

I. Defendant's *Amended Response to Plaintiff's Motion for (1) Second Order Directing Transfer of Funds, and (2) Administrative Access to Wells Fargo Account*, filed December 29, 2025; and

J. Defendant's *Notice of Erratum*, filed December 29, 2025.

The Court also has reviewed and considered the arguments and authorities presented during the hearing held on January 22, 2026.

This case involves the right to operate an ambulance service known as "Puerco Valley Ambulance Service" ("PVAS"), and the ownership of its assets. On the one hand, Plaintiff Puerco Valley Fire Department (the "District") claims that operation of PVAS and the ownership of PVAS assets belong to it. On the other hand, Defendant Brandy DeSpain ("DeSpain") and Puerco Valley Ambulance Service Inc. ("DeSpain's Company") claim that they are entitled to operate PVAS, and that they own the PVAS assets. In light of these disputes, the following claims have been asserted by the PV Fire Department:

| Claim | Cause of Action (v. all Defendants) |
|---|---|
| 1 | Fraud |
| 2 | Conversion |
| 3 | Replevin |
| 4 | Unjust Enrichment |
| 5 | Injunctive Relief |
| 6 | Declaratory Relief |
| 7 | Fraudulent Conveyance (A.R.S. § 44-1004) |

The Counterclaims asserted by Defendants DeSpain and DeSpain's Company are as follows:

| Counterclaim | Cause of Action (v. the District) |
|---|---|
| 1 | Declaratory Judgment (PVAS is the lawful owner of vehicles and of the PVAS Bank Account) |
| 2 | Violation of Open Meetings – A.R.S. § 38-341 *et seq.* |
| 3 | Tortious Interference with Business Expectancy |
| 4 | Conversion |
| 5 | Unjust Enrichment |

In the present Motion for Partial Summary Judgment, the District seeks summary judgment as to two claims and two counterclaims:

- Declaratory Judgment (Count 6 and Counterclaim 1): Essentially, the District and Defendants seek conflicting Declarations as to:
    - Whether the District or DeSpain's Company is authorized to operate PVAS;
    - Whether the District or DeSpain's Company equitably owns 7 vehicles titled in the name of PVAS because those assets were purchased with PVAS' operating account;
- Conversion (Count 2 and Counterclaim 4)

- Count 2: Whether DeSpain and/or DeSpain's Company have converted the amounts of $96,671 and $825,000 by withdrawing funds out of the PVAS operating account and not returning said funds to the District; and

- Counterclaim 4: Whether certain vehicles titled in the name of PVAS have been converted by the District.

In the Motion to Strike, Defendants seek to have the District's Exhibit 43 stricken on grounds that it is not authorized and prepared entirely by counsel. The Court agrees and will disregard this exhibit.

Summary judgment is appropriate only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Rule 56(a), *Arizona Rules of Civil Procedure*; *Orme School v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990); *Hourani v. Benson Hosp.*, 211 Ariz. 427, 432, 122 P.3d 6, 11 (App. 2005). All facts must be viewed in the light most favorable to the nonmoving party. *See Grain Dealers Mutual Insurance Co. v. James*, 118 Ariz. 116, 575 P.2d 315 (1978); *Farmers Ins. Co. v. Vagnozzi*, 138 Ariz. 443, 448, 675 P.2d 703, 708 (1983). The moving party bears the burden of demonstrating through admissible evidence that no genuine issue of material fact exists. *See Nat'l Hous. Indus., Inc. v. E.L. Joes Dev. Co.*, 118 Ariz. 374, 377, 576 P.2d 1374, 1377 (App. 1978); *Sanchez v. City of Tucson*, 191 Ariz. 128, 130, 953 P.2d 168, 170 (1998); *Nat'l Bank of Ariz. v. Thurston*, 218 Ariz. 112, 180 P.3d 977, 981 (App. 2008). Additionally, "summary judgment is not proper where possible inferences to be drawn from the circumstances are conflicting." *Executive Towers v. Leonard*, 7 Ariz. App. 331, 439 P.2d 303 (1968).

**THE COURT FINDS AND CONCLUDES** as follows:

## I. Operation of Puerco Valley Ambulance Service

1. In 1985, the Arizona Department of Health Services ("ADHS") granted a Certificate of Necessity ("CON") authorizing the operation of an ambulance service by PVAS as "Applicant."

2. In 1989, a transfer of control of PVAS was approved by AHDS. Upon the transfer, the CON was identified as CON 37.

3. The mailing address for CON 37 was PO Box 39, Sanders, Arizona. This was the mailing address of the District.



Case 2:26-bk-07566-MCW Doc 5 Filed 07/30/26 Entered 07/30/26 13:27:33 Desc Main Document Page 22 of 30

4. ADHS approved three separate rate increases in 1990, 1991 and 1993. All rulings were sent to a John Harris at the District. Mr. Harris was identified as the "District Director" in 1990, and as the "Emergency Services Director" in 1991 and 1993. The mailing address used was that of the District.

5. CON 37 lapsed in 1995.

6. In 1993, prior to the lapse, the District filed an application for temporary authority to operate ambulance services. This was granted on March 9, 1995. Notably, in the decision granting the application, it was noted: "the applicant is an Arizona fire district." AHDS sent the decision to Mr. Harris at the District address.

7. Approximately two months later, ADHS approved an initial Certificate of Necessity for PVAS.

8. Since the late 1990s, PVAS has been operating under, and providing ambulance services pursuant to, Certificate of Necessity 116 ("CON 116").

9. In 1999, ADHS approved an application to amend CON 116 to relocate the central operations station for PVAS to the District's fire station in Sanders.

10. In 2011, DeSpain began working for PVAS. She originally was hired as a paramedic. In 2013, DeSpain became the EMS Manager.

11. Since 2011, PVAS employees have been compensated from an account different from the District. The employer identification number (EIN) used is that of PVAS, which has remained consistent.

12. PVAS employees qualify for the Arizona State Retirement System. DeSpain was participating in ASRS while working as EMS Manager for PVAS. This demonstrates the existence of being employed by a government entity. The District is the only government entity for which an inference is supported by the record.

13. The record before the Court reflects that PVAS funds have been segregated and separately tracked over the years, and distinguished from other District expenditures.

14. Since 2011, the Wells Fargo bank account with an account number ending in XX1876 (the "Operating Account") has been the primary account used for the operations of PVAS and has remained unchanged.

15. DeSpain used the Operating Account solely for ambulance operations. To her credit, DeSpain accumulated operational reserves for PVAS of over $800,000 between 2013 and 2023.

16. Conflicting evidence exists concerning control over PVAS since 1995. Various Minutes from meetings of the District's Board of Directors between 2008 and 2018 indicate that the District's Board exercised supervisory control over PVAS.

17. Conversely, however, a 2016 Management Letter stated that PVAS was a "separate legal entity." This comports with the instruction to the Hinton/Burdick CPA firm in 2015 to remove references to ambulance services and the "Ambulance Fund" from the District's financial statements. It also is consistent with statements that a private company was running the ambulance service beginning at some point in 2017.

18. Since at least 2017, PVAS has operated separately.

19. In 2017, Ms. DeSpain incorporated the DeSpain Company. Thereafter, the DeSpain Company began to use the PVAS EIN and the Operating Account. The record, however, is devoid of evidence that the Company obtained its own EIN or bank account.

20. In 2018, DeSpain changed the name of the Operating Account to the DeSpain Company. DeSpain testified that she did not intend to change ownership of the account when she did so.

21. Before and after the name change for the Operating Account, DeSpain's use of the account did not change. The Operating Account received, held and distributed funds relating to the operations of PVAS.

22. The record is devoid of evidence that DeSpain paid any money to acquire PVAS or ownership of the Operating Account.

23. There is no evidence in the record that any of PVAS's reserves, or any money in the Operating Account, were generated in any way other than through revenues earned pursuant to the operations of ambulance services pursuant to CON 116.

24. The record is devoid of any financial arrangement or contract between DeSpain and the District assigning, leasing or otherwise authorizing her to use ***as her own*** CON 116. As such, the only conclusion that can be reached pursuant to the evidence is that individuals providing ambulance services are acting as agents of the District, and the funds and property expended and generated pursuant to the provision of ambulance services equitably belong to the District.

25. In early 2023, DeSpain physically left her office at a District fire station.

26. In March 2023, DeSpain filed paperwork to register the name "Puerco Valley Ambulance Service" to the DeSpain Company.

27. In March 2023, DeSpain submitted an application to ADHS to renew CON 116. Under type of business, she listed a "non-profit corporation." ADHS issued a letter dated October 5, 2023 rejecting DeSpain's renewal application. The grounds listed were that DeSpain was not employed by the recognized Certificate of Necessity holder.

28. In April 2023, the District submitted a separate application to ADHS to renew CON 116. By letter dated October 5, 2023, ADHS recognized and confirmed the District as the holder of CON 116 for PVAS.

29. The record is devoid of evidence that either DeSpain or the DeSpain Company has received a stand-alone Certificate of Necessity from the Arizona Department of Health Services to operate ambulance services within the District.

30. The DeSpain Company has not received its own Certificate of Necessity from the Arizona Department of Health Services.

31. The Court agrees with counsel for DeSpain that the record is less than neat. However, there exists no genuine issue of ***material*** fact that ambulance services are only authorized to be provided in the name of PVAS pursuant to CON 116. The right to hold CON116, and the right to operate PVAS to provide ambulance services pursuant to CON116, rests with and belongs to the District, not to or with DeSpain

or the DeSpain Company. DeSpain does not equitably hold or own CON 116 or PVAS's assets; the District does.

32. The District is entitled to summary judgment declaring that it is the holder of CON 116 as a matter of law.

33. Consequently, as a matter of law, the District is entitled to operate PVAS as the holder of CON 116.

## II. Funds From the Operating Account

34. It is undisputed that, on October 3, 2023, DeSpain withdrew $96,671 from the Operating Account to purchase a 2023 GMC truck (the "DeSpain Truck"). DeSpain has had access to the DeSpain Truck since its purchase. The District does not have access to the DeSpain Truck.

35. It is undisputed that, on October 6, 2023, DeSpain transferred $825,000 out of the Operating Account and into a separate account, owned by the DeSpain Company, ending in x4391 (the "DeSpain Account"). The District does not have access to the DeSpain Account.

36. It is undisputed that, on October 20, 2023, DeSpain transferred $835,959.72 from the DeSpain Account into two accounts at Chase Bank (the "Chase Accounts"). The District does not have access to the Chase Accounts.

37. The District is entitled to summary judgment and to obtain a declaration that funds from the Operating Account generated in connection with the provision of ambulance services pursuant to CON 116 are the property of the District.

38. The District is entitled to summary judgment declaring that DeSpain and/or the DeSpain Company (whoever owns the Chase Accounts) are liable to, and owe, the District $921,671 minus the amounts of money that DeSpain and/or the DeSpain Company contributed to the Operating Account and/or is owed.

39. Because a genuine issue of material fact exists as to the total amount of damages, the Court's declaration shall remain silent as to damages.



Case 2:26-bk-07566-MCW Doc 5 Filed 07/30/26 Entered 07/30/26 13:27:33 Desc
Main Document Page 26 of 30

**III. Vehicles and Funds**

40. Seven vehicles are at issue in this litigation (collectively, the "Vehicles"):

    i. 2014 Dodge 1500, VIN 1C6RR7XT5ES350961,
    ii. 2015 Dodge 1500, VIN 1C6RR7XT2FS636123,
    iii. 2016 Ford F-150, VIN 1FTEW1EG8GFA30984, and
    iv. 2021 RAM 4500, VIN 3C7WRLBL5MG586627.
    v. 1997 Ford F350, VIN 1FDKF37F8VEA00272,
    vi. 2015 RAM 3500, VIN 3C7WRTBL8FG707220, and
    vii. 2017 RAM 3500, VIN 3C7WRTBL0HG609172.

41. All seven Vehicles have government license plates.

42. Three of the seven Vehicles have MVD title histories showing DeSpain as co-owner.

43. The record before the Court does not permit a precise declaration at this time. However, to the extent a Vehicle was purchased with a majority of PVAS funds, the District is entitled to summary judgment that it owns the Vehicle, subject to its obligation to repay DeSpain and/or the DeSpain Company amounts that either or both contributed for repairs, tax, title, license, maintenance or improvements to such Vehicle ("Vehicle Operations").

44. Given the foregoing, the Court is able to declare that each Vehicle belongs to the District. However, DeSpain and/or the DeSpain Company may present the Court with evidence of either or both of their funds used on any one or more of the Vehicles to ensure that the District is not unjustly enriched.

45. Because the Vehicles remain at issue in this lawsuit, neither party shall sell or transfer any Vehicle without the consent of the other parties and/or Court order.

**IV. Conversion**

46. Based on the foregoing, there is no genuine issue of material fact that summary judgment is warranted against DeSpain and/or the DeSpain Company as to **liability**

**only** on Count 2 of the First Amended Complaint. DeSpain and/or the DeSpain Company converted funds from the Operating Account resulting from the operation of the ambulance service pursuant to CON 116. These funds were used to purchase the DeSpain Truck and/or deposited into the Chase Accounts. A genuine issue of material fact exists as to the total amount of funds converted (i.e. damages).

47. Finally, based on the foregoing, there is no genuine issue of material fact that the District is not liable to DeSpain and/or the DeSpain Company for conversion resulting from the District continuing to have possession of any of the seven Vehicles. Counterclaim 4 will be dismissed.

**Transfer of Additional Funds**

48. In 2025, the Court directed a transfer of $174,187.72 in funds from the Operating Account to the District.

49. The District has identified additional funds in the amount of $91,938,62 that have been deposited into the Operating Account. These funds relate to revenues of the District generated during litigation and during a time period when Defendants were not employed by Plaintiff. Defendant has provided no persuasive evidence to the contrary.

50. The District has made a sufficient showing that these funds relate to the provision of ambulance services and are unrelated to any services provided by Defendants, these funds belong to the District. This conclusion is further supported by the foregoing ruling. The transfer request will be granted.

51. The District has failed to carry its burden or provide any persuasive legal authority to support an order of administrative access to the Operating Account. Nor are any of the requirements of Wells Fargo Bank identified. The Court agrees with Defendants that Plaintiff gave short shrift to this portion of its *Motion* and has failed to carry its burden. Plaintiff also has failed to provide any form of Order – in violation of the applicable Rules of Procedure – that might list such authority. This request will be denied.

Good cause appearing,

**IT IS ORDERED** granting in-part *Plaintiff's Motion for Partial Summary Judgment,* filed September 17, 2025 as follows:

1) As to Count 6 of the First Amended Complaint, the District is entitled to summary judgment and the Court hereby declares:

   a) The District is the holder of CON 116. The District, therefore, is the entity that is authorized to operate (or to direct the operation of) ambulance services in the name of PVAS. All assets and liabilities relating to the operation of ambulance services in the name of PVAS equitably belong to the District;

   b) The money in the Operating Account that was generated from the operation of ambulance services in the name of PVAS belongs to the District. DeSpain and/or the DeSpain Company (whoever owns the Chase Accounts) owes the District the funds removed from the Operating Account that ultimately were transferred to the Chase Accounts and/or used to purchase the DeSpain Truck, ***minus*** the amount of personal money that DeSpain and/or the DeSpain Company contributed to the Operating Account;

   c) The seven Vehicles purchased with proceeds from the Operating Account belong to the District. The District owes DeSpain and/or the DeSpain Company the amounts of personal money that DeSpain and/or the DeSpain Company contributed to Vehicle Operations.

2) As to Count 4 of the First Amended Complaint, the District is entitled to summary judgment as to liability.

3) As to Counterclaim 1, the District is entitled to summary judgment in its favor; and

4) As to Counterclaim 4, the District is entitled to summary judgment in its favor.

**IT IS FURTHER ORDERED** denying in-part *Plaintiff's Motion for Partial Summary Judgment,* filed September 17, 2025 as to any declaration of damages / amounts owed as to Count 6 and as to damages on Count 4 of the First Amended Complaint.

**IT IS FURTHER ORDERED** granting Defendant's *Motion to Strike,* filed December 29, 2025.

**IT IS FURTHER ORDERED** granting in-part and denying in-part *Plaintiff's Motion for: (1) Second Order Directing Transfer of Funds, and (2) Administrative Access to Wells Fargo Account*, filed December 4, 2025. The motion is granted insofar as Defendants shall transfer $91,938.62 in funds from the Operating Account to the District no later than **January 30, 2026**. The motion is denied without prejudice insofar as administrative access is requested. A separate order shall issue.

**IT IS FURTHER ORDERED** directing the parties to complete private mediation **before April 30, 2026**.

**IT IS FURTHER ORDERED** vacating the virtual Trial Setting Conference scheduled for April 7, 2026 at 9:00 a.m. and resetting the same for **June 2, 2026 at 9:00 a.m.** This virtual hearing will be held on the Court Connect platform and will use the following contact information:

(Video) https://tinyurl.com/jbazmc-cvj23
(Phone) 1-917-781-4590, Phone Conference ID: 269 483 919#.